[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs, Malcolm Wright and Phyllis Wright, husband and wife, bring this action in three counts seeking to regain title to real estate known as 9 Westwood Terrace, Bristol, Connecticut.
The defendant, Donald E. Wright, Malcolm's brother, denies the material allegations of the complaint, raised special defenses; and, presses a CT Page 10407 counterclaim, alleging that the plaintiffs were in possession under a lease, and that they were in breach of an agreement to maintain insurance on the premises.
This action results from the successful attempt by the defendant to prevent the plaintiffs' house from being lost to them through foreclosure of a mortgage on their home.
This came about when the plaintiffs' income, from a gasoline station and auto repair shop owned and operated by Malcolm Wright, rather suddenly and unexpectedly dropped to a level where the plaintiffs were unable to pay their bills including the monthly mortgage payments. Malcolm consulted with Donald about the problem. He also told him about his suspicion that the bookkeeper might be pocketing money. Donald and Malcolm had a close personal relationship while growing up. It continued even after each was married.
Donald immediately investigated the cause of the reduced income and determined that the bookkeeper was the culprit and fired him with Malcolm's approval. Thereafter, he arranged through a bank he did business with, to place a new mortgage on the plaintiffs' home. Since the plaintiffs' credit did not satisfy the bank's requirements for the mortgage, Malcolm and Donald agreed to have the plaintiffs' property transferred to Donald. He would then take out the mortgage in his name and pay off the mortgage being foreclosed together with other bills and costs. The mortgage loan was insufficient to pay all these debts. An additional $2,500.00 was provided by Donald to carry out this plan. The brothers agreed that Malcolm and his family would remain in the house, pay all the expenses to maintain the house, including mortgage, taxes, insurance, etc.; that when Malcolm got back his financial footing the house would be transferred by Donald back to Malcolm and Phyllis, at which time they would assume the mortgage or pay it off and repay Donald the $2,500.00 he had advanced to complete the above-mentioned refinancing agreement.
The above-described actions were carried out. The plaintiffs continued living in the house. They paid the mortgage monthly, however, with some late payments. Also, when the house insurance policy listed in Malcolm's and Phyllis' names ran out they could not renew it as title to the property was in Donald's name. Thus, the house was not insured for a number of years.
This situation continued for years. Occasionally it was mentioned between Malcolm and Donald that the title should be transferred back to the plaintiffs. These conversations were infrequent and were prompted by instances as where the plaintiffs had fallen behind in mortgage CT Page 10408 payments, failed to have insurance coverage on the house or were renovating the house. At no time during this long period was there any indication that the house did not belong to the plaintiffs. Rather, it was understood that title was in Donald's name to preserve the house for the plaintiffs; that Donald would transfer the property back to the plaintiffs at their request and at their assumption of the outstanding mortgage and upon their repayment of the $2,500.00 advanced by Donald.
During this period of time, the very close relationship between Malcolm and Donald loosened somewhat when Donald remarried after divorcing his first wife. Donald's second wife did not fit in comfortably with other Wright family members. They were not included in family gatherings. There was infrequent contact among members of the two families.
The difficulties between Malcolm's and Donald's families came to a head when Malcolm became quite ill, and his family determined that the title status of the house should be resolved.
Donald was contacted. Arrangements were made to have the house transferred by Donald with the mortgage assumed by Malcolm and Phyllis and the payment of the $2,500.00 made to Donald. This was to take place at an attorney's office. Donald failed to arrive. Another meeting was arranged at the attorney's office. Donald again failed to appear.
This action was then commenced. The court, after hearing the evidence, examining the exhibits, reviewing counsel's briefs and applying the pertinent law determines that the plaintiffs have proved by a preponderance of the evidence that real estate known as 9 Westwood Terrace, Bristol, Connecticut, was property owned by the plaintiffs; that they had financial difficulties resulting in a mortgage foreclosure action being brought against the plaintiffs' 9 Westwood Terrace home.
Malcolm Wright informed his brother, Donald Wright, about the potential loss of the plaintiffs' home. The brothers had a close relationship since childhood. They trusted each other and had helped each other when the need arose. Donald immediately arranged to have the home refinanced and debts paid. To accomplish this required the transfer of the title to the house to Donald who was financially creditworthy. The mortgage was taken out by Donald, and he advanced the sum of $2,500.00 needed to completely fund the refinancing transaction.
As between the brothers, Donald did this so that Malcolm and his family could continue living in the house. It was understood by Donald and Malcolm that Donald would hold title to the property with a new mortgage in his name until Malcolm was again financially able to have the property transferred back to himself and Phyllis, his wife. CT Page 10409
In the meantime, Malcolm would continue to be responsible for all the payments on the mortgage, the taxes, utilities, etc., holding Donald harmless regarding his financial exposure resulting from the transaction. Further, when Malcolm was again financially viable, Donald would transfer the property back to Malcolm and Phyllis, and they would refinance the mortgage debt and repay to Donald the $2,500.00 he had advanced previously.
Thus, Donald would hold the property in trust for Malcolm and Phyllis while they continued to live there and until they requested the retransfer of the property to them.
Eventually, after a number of years, the plaintiffs requested that Donald transfer the property back to them. These requests were ignored by Donald, and he did not transfer the property back to the plaintiffs. This action ensued.
The court finds that Donald has held the property, 9 Westwood Terrace, Bristol, in trust for the plaintiffs, Malcolm and Phyllis Wright; that their request for the retransfer of the property should be honored, subject to the plaintiffs carrying out the agreed to conditions, i.e., pay off the mortgage and repay $2,500.00 to Donald. To permit Donald to retain the property would unjustly enrich him at the expense of the plaintiffs. He admits that he has not transferred the property back to the plaintiffs because Malcolm's family did not seem to appreciate all he had done for them. He complained that he never received so much as a thank you from them for all that he did for them.
Donald's only out-of-pocket costs were the $2,500.00 he advanced at the time he received title to the property and took out the mortgage on it. All expenses and mortgage payments were made by the plaintiffs. In addition, the plaintiffs expended thousands of dollars renovating the house with Donald's knowledge and approval.
The defendant argues that the "clean hands" doctrine should apply here to restrict the application of equity by the court requested by the plaintiffs. He argues that the failure by the plaintiffs to make the mortgage payments for several months until pressed by the defendant; and, again, their failure to keep the house insured disqualifies them from having the court consider applying equitable considerations herein.
The plaintiffs respond that they were financially unable to make the monthly payments for a time and had to cash in an insurance policy to bring the mortgage payments up-to-date. As to the failure to insure the house, they did attempt to get coverage but were unable to since they CT Page 10410 were not the title holders.
The court finds that although these were serious lapses on the plaintiffs' part, the final result was not detrimental to the defendant and not sufficient to warrant the imposition of the doctrine of clean hands by the court.
The defendant also contends that the plaintiffs were remiss in failing to seek the return of the premises much sooner rather than wait the twenty plus years before demanding the retransfer of the property. However, the defendant does not show how, if at all, he was damaged by the plaintiffs' procrastination. Throughout the years he did not press the plaintiffs to arrange for the transfer, nor did he claim to them that it was a burden or expense upon him. He was content to let the situation remain without change. In fact, when they finally did ask him to retransfer the property, he ignored their requests.
Thus the court finds that laches does not apply as a defense.
The defendant's final argument is that the statute of frauds (Conn. Gen. Stat. § 52-550) applies here. However, the relief requested is to have the court through its equitable powers recognize an injustice that would arise by the application of the defendant's argument. The facts herein conform to situations where an exception arises in the application of the statute of limitations.
The court finds that this is one of those situations where its equitable powers should apply and determines that the statute of frauds does not apply herein.
As to the defendant's counterclaim, it was not pressed by the defendant. No evidence was presented in support of the allegations set out in the counterclaim. Thus it was not proved.
The same is true regarding plaintiffs' second count. No evidence was present to support the allegations of that count, and it is deemed to be abandoned by the plaintiffs.
Therefore, judgment is to enter for the plaintiffs and against the defendant as to counts one and three, as well as on defendant's counterclaim; also, judgment may enter for the defendant on count two of the complaint.
Further, the judgment is to reflect the order of the court that: The defendant is to transfer his full title to the property, 9 Westwood Terrace, Bristol, Connecticut, to the plaintiffs, Malcolm Wright and CT Page 10411 Phyllis Wright, upon receipt of the sum of Two Thousand Five Hundred ($2,500.00) Dollars[1], and the assumption of the outstanding mortgage debt.
Together with court costs to the plaintiffs.
 ____________________________ KREMSKI, JUDGE TRIAL REFEREE